# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ENVERVE, INC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 11 C 472 |
| | ) |
| UNGER MEAT COMPANY, a Minnesota Corporation, | ) Judge Ruben Castillo |
| | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff EnVerve, Inc. ("EnVerve") brings this action against Unger Meat Company ("Unger") for copyright infringement, breach of contract, account stated, and unjust enrichment. (R. 13, Consol. Compl.) Presently before the Court is EnVerve's motion for a preliminary injunction. (R. 16, Pl.'s Mot. for Prelim. Inj.) For the reasons stated below, the motion is denied.

## BACKGROUND

On September 7, 2010, EnVerve and Unger entered into a "Marketing and Promotions Agreement" (the "Agreement"). (R. 13, Consol. Compl., Ex. A.) Under the Agreement, EnVerve agreed to provide Unger with marketing services. (*Id.* ¶ 9.) The Agreement states that "[u]pon full payment of all invoices issued to Unger by EnVerve, Unger shall own any and all rights titles, and interest in and to, including copyrights, and other intellectual property rights[.]" (*Id.*, Ex. A at 1.) The Agreement also provides procedures for project work flow, cost estimates, and billing. (*Id.* at 3-4.)

Pursuant to the Agreement, EnVerve provided Unger with numerous creative works and marketing, research, copy, design, layout, programming, and artwork services. (*Id.* ¶¶ 17-18.) From May through December of 2010, EnVerve provided Unger with invoices totaling $350,498.95. (*Id.* ¶ 20.) Unger paid EnVerve a total of $174,581.72 in October of 2010. (*Id.* ¶ 21.) According to EnVerve, Unger "began to fall behind on payment" in November of 2010. (*Id.* ¶ 23.) When EnVerve asked for payment of the unpaid invoices, Unger requested that EnVerve provide more detailed invoices for the work completed by EnVerve. (*Id.* ¶ 24.) On December 1, 2010, EnVerve sent Unger more detailed invoices, as well as copies of every unpaid invoice and detailed descriptions of the internal services completed for Unger. (*Id.* ¶¶ 25, 27.) EnVerve alleges, however, that the Agreement does not require that EnVerve meet Unger's request to provide "an hourly breakdown of its costs, rates, personnel utilized on each project, or activities in connection with the completion of each project on the invoices issued to Unger." (*Id.* ¶ 13.)

As of December 1, 2010, Unger had failed to pay outstanding invoices totaling $134,219.60. (*Id.* ¶ 30.) EnVerve also avers that Unger has distributed, copied, and used the creative content developed by EnVerve through third parties despite the fact that Unger has not fully paid for the work. (*Id.* ¶¶ 34-35.) Following Unger's refusal to pay, EnVerve applied to the United States Registrar of Copyrights for Certificates of Registration for the works it provided Unger. (*Id.* ¶ 19.)

On January 21, 2011, EnVerve filed suit against Unger. (R. 1, Compl.) On February 23, 2011, EnVerve filed a consolidated complaint (the "complaint"). (R. 13, Consol. Compl.) In Count I of the complaint, EnVerve brings a breach of contract claim alleging that Unger has

violated the Agreement by failing to pay for the work completed by EnVerve and by using, copying, and distributing EnVerve's work despite failing to pay the outstanding invoices. (*Id.* ¶¶ 48-53.) In Count II, EnVerve avers that Unger knowingly and willfully infringed the copyrights of EnVerve's creative works by publishing, reproducing, using, and distributing the works. (*Id.* ¶¶ 58-67.) In Counts III and IV, EnVerve alleges claims for unjust enrichment and account stated. (*Id.* ¶¶ 70-73, 75-79.)

EnVerge presently seeks entry of a preliminary injunction based on its copyright infringement claim. (R. 16, Pl.'s Mot. for Prelim. Inj.) EnVerve specifically requests that the Court enjoin Unger "from using, copying, or distributing any of EnVerve's copy-right protected intellectual property listed in Group Exhibit 'B' attached to Plaintiff's Consolidated Complaint." (*Id.* at 2.)

## ANALYSIS

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 129 S.Ct. 365, 376 (2008) (citations omitted). Instead, this "drastic remedy . . . should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted); *see also Goodman v. Ill. Dep't of Fin. & Prof'l Reg.*, 430 F.3d 432, 437 (7th Cir. 2005) (same). To obtain a preliminary injunction, EnVerve must establish that: (1) it "is likely to succeed on the merits"; (2) that it "is likely to suffer irreparable harm in the absence of preliminary relief"; (3) "that the balance of equities tips in [its] favor"; and (4) "that an injunction is in the public interest." *Chi. Teachers Union, Local No. 1, v. Board of Educ. of Chi.*, No. 10-3396, 2011 WL 1126037, at *8 (7th Cir. Mar. 29, 2011) (quoting *Winter*, 129 S.Ct. at 374).

3

The Court weighs all of these factors, applying a "sliding scale" approach under which "the more likely plaintiff will succeed on the merits, the less the balance of irreparable harms need favor plaintiff's position." *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001); *see also Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010) ("These considerations are interdependent: the greater the likelihood of success on the merits, the less net harm the injunction must prevent in order for preliminary relief to be warranted.") (citation omitted). "The sliding scale approach is not mathematical in nature, rather it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Ty, Inc.*, 237 F.3d at 895-96 (internal quotation marks and citations omitted).

## I. Likelihood of success on the merits

In determining whether the "extraordinary remedy" of a preliminary injunction is warranted in this case, the Court first considers whether EnVerve has established that it is likely to succeed on the merits of its copyright infringement claim. As an initial matter, the Court notes that the parties' briefing of this important element is very cursory. For EnVerve, which bears the burden on this motion, this brevity is fatal; its conclusory arguments and failure to address the potentially dispositive argument raised by Unger lead this Court to conclude that it has not established likelihood of success on the merits for purposes of this motion.

In support of its copyright infringement claim, EnVerve claims that it holds the intellectual property rights to the creative works it produced, and that Unger has used, copied, and distributed those works in violation of the Agreement and EnVerve's intellectual property rights. (R. 17, Pl.'s Mem. at 5.) If true, these elements would establish copyright infringement,

4

as "a plaintiff asserting copyright infringement must prove: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *See Schrock v. Learning Curve Int'l*, 586 F.3d 513, (7th Cir. 2009) (citation omitted). EnVerve's cursory and conclusory arguments, however, fail to demonstrate that EnVerve has a likelihood of succeeding in establishing both elements. First, there is significant dispute regarding the ownership of the works under the Agreement, and EnVerve fails to persuade the Court at this stage that its interpretation of the Agreement is the correct one. Second, even assuming EnVerve were to prevail in showing that it owns a valid copyright to the works, EnVerve has not adequately addressed the second element necessary to prove trademark infringement, instead concluding without support that Unger's undisputed use of the creative works is sufficient to establish infringement. (*See* R. 33, Pl.'s Reply at 2.) This conclusion, however, fails to acknowledge that Unger's use of the creative works may be permitted under the Agreement, by Unger's payment of some of the invoices, or by one of the many affirmative defenses Unger has asserted.

Even more problematic than EnVerve's poorly developed infringement argument is its complete failure to address Unger's contention that the Court should dismiss the copyright infringement claim altogether. In opposing the preliminary injunction and also in its motion to dismiss, Unger maintains that this dispute "sounds in simple contract, and not copyright infringement." (R. 29, Def.'s Resp. at 4.) Despite the potentially dispositive nature of this argument, EnVerve chose not to address it even while insinuating that it is perhaps Unger's best argument. (*See* R. 33, Pls.' Reply at 1.) ("[Defendant's assumption] that 'this action is a simple breach of contract claim,' is the subject of Defendant's Motion to Dismiss, which has yet to be ruled upon—the rest of Defendant's assumptions are both legally and factually incorrect.").

Ignoring unfavorable arguments is no way for EnVerve to persuade the Court that it is likely to succeed on the merits.

In sum, while the Court does not conclude that EnVerve has no chance of success on the merits of its copyright infringement claim, the Court finds that EnVerve's showing on this claim at this stage is minimal. Accordingly, under the "sliding scale" approach for granting injunctive relief, EnVerve will need a very strong showing on the other factors to be entitled to a preliminary injunction.

## II. Irreparable harm

The Court next considers the extent to which EnVerve will be irreparably injured if injunctive relief is not granted. A potential injury is irreparable when "the threatened harm would impair the court's ability to grant an effective remedy." 11A Charles Alan Wright, Arthur Miller, Mary Kay Kane & Richard L. Marcus, Federal Practice & Procedure § 2948.1 (2d ed.). Thus, potential harm is generally not "irreparable" if the party seeking an injunction has an adequate alternative remedy in the form of money damages or other relief. *Id.* Conversely, an injury that is not easily measurable in monetary terms, such as an injury to reputation or goodwill, is often viewed as irreparable. *Id.*; *see also Ty, Inc.*, 237 F.3d at 902.

EnVerve makes three arguments in support of its contention that there is no adequate remedy at law for Unger's infringement of EnVerve's intellectual property rights and that EnVerve will be irreparably harmed absent an injunction. First, EnVerve contends that Unger's use of the copyrighted creative works is irreparably damaging EnVerve's right to adapt the creative works for another customer. (R. 17, Pl.'s Mem. at 7.) Second, EnVerve argues that Unger's use and alleged alteration of the creative works will irreparably harm EnVerve's

reputation. (*Id.*) Finally, EnVerve is "concern[ed] that [the] ultimate judgment will be uncollectible" because Unger may become insolvent. (*Id.* at 8.)

Based on these arguments, EnVerve's showing on this factor also weighs against the granting of a preliminary injunction. First, the Court finds that money damages would be an adequate remedy at law for EnVerve's claim that Unger's continued use of the creative works would likely prevent EnVerve from adapting them for another client. This claim is not one in which "it is virtually impossible to ascertain the precise economic consequences." *Ty, Inc.*, 237 F.3d at 902 (citation omitted). Instead, the value of the already-completed work is purportedly contained in the invoices EnVerve provided Unger, or is similarly ascertainable.

Second, while there may not be an adequate remedy at law for EnVerve's claims of reputational harm, this claim, like EnVerve's concerns about Unger's potential insolvency, is too speculative in nature to meet EnVerve's burden to establish irreparable injury. In *Winter*, the Supreme Court clarified that, at a minimum, the moving party must "demonstrate that irreparable harm is *likely* in the absence of an injunction," and that the mere "possibility" of irreparable harm will not suffice. 129 S.Ct. at 375-76. Here, EnVerve's worst case scenarios are mere speculative possibilities; there is no evidence that this parade of horribles—reputational damage and Unger's insolvency—is *likely* to happen.

Because EnVerve has not presented sufficient evidence to demonstrate that any potential harm cannot be adequately addressed by money damages or is more than mere speculation, the Court finds that this factor tips against granting injunctive relief.

## III. Balancing of harms and the public interest

Given the very modest showing in regard to the likelihood of success on the merits and the purely speculative nature of the irreparable harm posited by EnVerve, the Court finds that EnVerve has not met its burden of showing that the extraordinary remedy of preliminary injunctive relief is appropriate in this case. Nevertheless, the Court will provide a "cursory examination" of the remaining factors as encouraged by the Seventh Circuit. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States*, 549 F.3d 1079, 1087 (7th Cir. 2008). Neither party contends that any important public interest is at stake, and thus the Court focuses on the relative balance of the harms.

In this inquiry, the Court must consider the harm that Unger will suffer if preliminary relief is granted improvidently, balancing such harm against the harm that EnVerve will suffer if relief is denied. *See Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994). In this case, as previously discussed, there is minimal—if any—possibility that EnVerve will suffer irreparable harm absent the issuance of an injunction. Any likely harm that EnVerve may suffer can be remedied by monetary damages. On the other hand, an injunction would require Unger to change a significant amount of its marketing materials for which it has already paid EnVerve $174,581.72. Given the minimal possibility of irreparable harm to EnVerve absent an injunction and EnVerve's weak showing of success on the merits, the balance of the harms tips decidedly in favor of Unger. Accordingly, the Court declines to enjoin Unger from using the creative works that are at the center of this dispute pending a determination on the merits.

## CONCLUSION

For the foregoing reasons, EnVerve's motion for a preliminary injunction (R. 16) is DENIED.[1]

Entered: /s/ Ruben Castillo

Judge Ruben Castillo
United States District Court

Dated: April 26, 2011

---

[1] In its response, Unger requests that the Court award Unger its costs and attorneys' fees associated with responding to this motion. (R. 29, Def.'s Resp. at 4.) The Court declines to rule on this issue until Unger files a separate motion and EnVerve has had an opportunity to fully respond.